**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **MILLERKNOLL, INC., KNOLL, INC., and THE ISAMU NOGUCHI FOUNDATION AND GARDEN MUSEUM**<br><br>Plaintiffs,<br><br>**v.**<br><br>**INHABIT.IO, INC. d/b/a THE ESSENTIAL**<br><br>Defendant. | **Case No.** 26-3334<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT AND JURY DEMAND

Plaintiffs MillerKnoll, Inc., Knoll, Inc., and The Isamu Noguchi Foundation and Garden Museum (hereinafter collectively referred to as "Plaintiffs") file this Complaint against Inhabit.io, Inc. d/b/a The Essential and in support thereof, allege as follows:

## NATURE AND BASIS OF ACTION

1. This is an action for trademark counterfeiting, trademark and trade dress infringement, false designation of origin, dilution, and unfair competition in violation of Sections 32(1), 43(a) and 43(c) of the federal Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a) and (c); common law trademark and trade dress infringement, unfair competition, and deceptive trade practices under the laws of the State of Michigan; deceptive trade practices in violation of the Michigan Consumer Protection Act, MCL 445.903 et seq.; and unjust enrichment. Plaintiffs seek,

among other things, temporary, preliminary, and permanent injunctive relief, actual damages, an accounting of Defendant's profits, enhanced damages, and recovery of Plaintiffs' reasonable costs and attorneys' fees.

## THE PARTIES

2. Plaintiff, MillerKnoll, Inc., formerly Herman Miller, Inc. and d/b/a Herman Miller (and referred to herein as "Herman Miller" except as otherwise indicated), is a corporation organized and existing under the laws of the State of Michigan having a principal place of business at 855 East Main Avenue, Zeeland, Michigan 49464.

3. Plaintiff, Knoll, Inc. ("Knoll") is a wholly owned subsidiary of MillerKnoll and is organized and existing under the laws of the State of Delaware having a principal place of business at 1235 Water Street, East Greenville, Pennsylvania 18041.

4. Plaintiff, The Isamu Noguchi Foundation and Garden Museum ("Noguchi Foundation") is a non-profit New York Education Corporation having a principal place of business at 32-37 Vernon Boulevard, Long Island City, New York 11106.

5. On information and belief, Defendant, Inhabit.io, Inc. d/b/a The Essential ("Defendant" or "The Essential") is a corporation organized and existing under the laws of Delaware having a principal place of business at 150 Hooper Street, Suite 215, San Francisco, CA 94107.

6. Defendant operates the website www.theessential.com where it advertises and sells furniture in the United States. Specifically, the website advertises that it sells furniture pieces that are "reproductions of design icons." The following is a capture of the website www.theessential.com:




7. Defendant's furniture "reproductions of design icons" are advertised, and offered for sale to consumers throughout the United States, including consumers in the Western District of Michigan, through Defendant's website, which accepts orders for, and offers shipment of, that furniture to addresses in this District. Defendant has sold and shipped its furniture "reproductions of design icons" to consumers in this District.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337 and 1338, and has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' claims under Michigan law.

9. This Court has personal jurisdiction over Defendant based on its sale of goods that infringe on Plaintiffs' trademarks and trade dress in the Western District of Michigan because Defendant has purposefully directed its infringing activities at Michigan and this District, and Plaintiffs' claims arise out of and relate to those activities. Among other things, Defendant operates a commercial website through which Michigan residents may order the infringing furniture for

delivery in Michigan, accepts orders for the infringing furniture for delivery to consumers in this District, has sold and shipped infringing furniture to customers in Michigan, and advertises the infringing furniture through social media content that reaches Michigan consumers, and, upon information and belief, has directed its advertising specifically at Plaintiffs' products, including by naming Plaintiffs' products and comparing them to its own, knowing that Plaintiff Herman Miller is headquartered in this District and would suffer the resulting harm here, causing injury to Plaintiffs in Michigan and this District.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (2), (c)(2), and (d) because Defendant has advertised, offered for sale, accepted orders, sold, and distributed infringing furniture "reproductions of design icons" to consumers within this District. Defendant's unauthorized use of Plaintiffs' marks and its advertising, offers for sale, and sales of the infringing furniture "reproductions of design icons" directed to this District, including through the use of its website directed to consumers within this District, and the resulting likelihood of confusion among consumers here, constitute a substantial part of the events giving rise to Plaintiffs' claims under the Lanham Act and Michigan law. Plaintiff Herman Miller has been headquartered in this District for over a century, and the injury to its goodwill from Defendant's conduct is centered here. Additionally, Defendant is a corporation subject to personal jurisdiction in this District with respect to this action, and therefore resides in this District for venue purposes.

## HERMAN MILLER

11. For over a century, Herman Miller has been based in West Michigan and has been a leader in the highly competitive business of designing, manufacturing, distributing, and selling high-quality, design-oriented furniture.

12. Herman Miller is renowned for its contemporary furniture designs, which have been deemed works of art and inducted into major museums across the United States, including

the Museum of Modern Art.

13. For decades, Herman Miller has developed close working relationships with prominent designers, including Ray and Charles Eames, Bill Stumpf, and Don Chadwick, who have entrusted their design legacies to Herman Miller to protect for posterity.

14. Herman Miller manufactures furniture in the United States pursuant to rigorous quality controls, supporting thousands of local jobs, including many of the furniture designs asserted herein.

15. Herman Miller's iconic furniture products have achieved widespread commercial and cultural recognition. The intellectual property associated with Herman Miller's furniture protects the distinctive products and the goodwill Herman Miller has built in those designs through decades of use.

16. Herman Miller's iconic furniture products include the EAMES lounge chair and ottoman sold since 1956 and pictured below. *See* www.store.hermanmiller.com.



## KNOLL

17. Since 1938, Knoll has pioneered a variety of innovations in the design of furniture for the office, home, and higher education settings. Through its efforts over the last 90 years, Knoll has become a global leader in the design and manufacture of commercial and residential furniture, accessories, and textiles. Knoll's constellation of design-driven products allows consumers to create inspired modern interiors.

18. Knoll's design philosophy and modern perspective reflect a historical commitment to partnering with the world's leading designers and architects to create revolutionary products which include iconic designs such as the Saarinen table, the Barcelona chair, the Womb chair, and many others. Over 40 of Knoll's furniture designs are part of the permanent design collection at the Museum of Modern Art in New York City.

19. Knoll also has developed close working relationships with influential architects and designers, including Ludwig Mies van der Rohe, Harry Bertoia, Eero Saarinen, Marcel Breuer, and Warren Platner, who entrusted their design legacies to Knoll to protect for posterity.

20. The intellectual property associated with Knoll's furniture protects the distinctive products and the goodwill Knoll has built in those designs through decades of use.

21. Knoll's iconic furniture products include, for example, the Barcelona chair sold since 1954 and pictured below. *See* www.knoll.com.



**NOGUCHI FOUNDATION**

22. The Noguchi Foundation is dedicated to preserving and promoting the work and legacy of artist and designer Isamu Noguchi. The Foundation stewards Noguchi's works and archives and protects the intellectual property associated with his artistic legacy.

23. Among Noguchi's celebrated furniture designs is the Noguchi Coffee Table at issue in this action. The Foundation exclusively licenses U.S. rights in the Noguchi Coffee Table to MillerKnoll, which is authorized to manufacture and sell the design.

24. The Noguchi Coffee Table sold since 1948 is pictured below. *See* store.hermanmiller.com.



25. Plaintiffs' iconic furniture designs have generated billions of dollars in sales, are widely loved by their users, have achieved widespread commercial and cultural recognition, and represent enormous goodwill resulting from unparalleled sales, critical acclaim, and extensive publicity, both advertised and spontaneous.

**PLAINTIFFS' ICONIC FURNITURE DESIGNS**

26. Plaintiffs protect their rights in the distinctive configurations of their furniture designs through federal trademark registrations. The registered product configurations asserted in this action are identified below (the "Registered Trademarks"), together with their respective owners, registration numbers, covered goods, and reference to the Exhibit attaching the Registration:

a. United States Registration No. 2,648,166, owned by the Noguchi Foundation, for the following design for the Noguchi Coffee Table for "tables" (Ex. A):



b. United States Registration No. 6,886,737, owned by Knoll, for the following design for the Saarinen Table for "tables" (Ex. B):



c. United States Registration No. 2,716,843, owned by Herman Miller, for the following design for the Eames Lounge Chair for "furniture, namely, a chair" (Ex. C):



d. United States Registration No. 5,767,140, owned by Herman Miller, for the following design for the Eames Ottoman for "furniture, namely, ottomans" (Ex. D):



e. United States Registration No. 5,672,151, owned by Herman Miller, for the following design for the Nelson Bench for "furniture, namely, benches" (Ex. E):



f. United States Registration No. 2,894,978, owned by Knoll, for the following design for the Brno Chair for "chairs" (Ex. F):



g. United States Registration No. 5,694,476, owned by Knoll, for the following design for the Womb Chair for "chairs" (Ex. G):



h. United States Registration No. 3,105,591, owned by Herman Miller, for the following design for the Eames Aluminum Group Chair, Management for "furniture, namely chairs" (Ex. H):



i. United States Registration No. 2,893,025, owned by Knoll, for the following design for the Barcelona Chair for "chairs" (Ex. I):



27. The foregoing registrations are on the Principal Register and remain in full force

and effect. Under 15 U.S.C. §§ 1057(b) and 1115(a), these registrations constitute prima facie evidence of the validity of the registered marks, the respective registrants' ownership, and their exclusive rights to use the marks in commerce in connection with the goods specified in the registrations.

28. Under 15 U.S.C. §§ 1065 and 1115(b), all except one (26.b.) of the foregoing registrations are incontestable, and therefore, constitute conclusive evidence of the validity of the registered marks, the respective registrants' ownership, and their exclusive rights to use the marks in commerce in connection with the goods specified in the registrations.

29. In addition to the Registered Trademarks, Plaintiffs also have common law trade dress rights in the product configurations referenced above as well as those identified below (the "Unregistered Trade Dress"). The Registered Trademarks and Unregistered Trade Dress are collectively referred to as the "Trade Dress."

a. For the following design for the Saarinen Tulip Chair of Knoll, marketed and sold since 1958, consisting of the combination of a single pedestal base, a slender central stem, and a rounded molded seat shell with an angled back and curved top, as depicted below:



https://www.knoll.com/shop/en_us/collection-saarinen-tulip

b. The Eames Turned Stools have been promoted since the 1960s by Herman Miller, the following Eames Turned Stool-D Shape of Herman Miller has been sold for several years and is a stool consisting of an angled circular top, an angled circular bottom, two protruding circular collars, and a beveled center portion separating the two collars, as depicted below:



store.hermanmiller.com/living-room-furniture-side-tables/eames-turned-stool-shape-d/

c. For the following design for the Story Bookcase of Herman Miller, marketed and sold since 2017, consisting of a tall, narrow vertical support, a rectangular base, and multiple thin, horizontal shelves extending from the vertical support, as depicted below:



store.hermanmiller.com/furniture-shelving-storage-bookcases/story-bookcase-tall

d. For the following design for the Eames Executive Chair, marketed and sold since 1961 by Herman Miller, consisting of a back formed by two stacked, generally equal-sized rectangular cushions with piping front and back, each tufted with two buttons, and a polished metal frame that, in side profile, forms a lower-case "b" and supports padded armrests with piping elevated above the frame, as depicted below:



dwr.com/office-chairs/eames-executive-chair

e. For the following design for the Nelson Propeller Bubble Pendant, marketed and sold since 1952 by Herman Miller, consisting of a pendant shade with broad curved surface sections that twist around the shade, forming alternating upper and lower outward projections, as depicted below:



store.hermanmiller.com/lighting-ceiling-lights-pendants/nelson-propeller-bubble-pendant/

f. For the following design for the Nelson Pear Bubble Pendant, marketed and sold since 1952 by Herman Miller, consisting of a pendant shade that is widest at its

rounded middle and tapers in smooth curves to a narrower top and bottom, with closely spaced, thin vertical ribs running from top to bottom along the shade's contour, as depicted below:



https://store.hermanmiller.com/lighting-ceiling-lights-pendants/nelson-pear-bubble-pendant

g. For the following design for the Nelson Saucer Crisscross Bubble Pendant, marketed and sold since 1952 by Herman Miller, consisting of a flattened, saucer shaped shade that is wider than it is tall and tapers towards a point on each of its sides and including crisscrossing diagonal lines that form a lattice of diamonds, as depicted below:



https://store.hermanmiller.com/lighting-ceiling-lights-pendants/nelson-saucer-crisscross-bubble-pendant

h. For the following design for the Nelson Swag Leg Desk, marketed and sold since 1958 by Herman Miller, consisting of a desk with a flat writing surface and a narrow raised shelf above a row of compartments separated by thin, brightly colored dividers, joined by curved, sweeping sides, and supported by slender metal legs that curve and splay outward at the bottom, connected by a wood accent piece, as depicted below:



https://store.hermanmiller.com/desks-tables/nelson-swag-leg-desk

i. For the following design for the Airia Desk, marketed and sold by Herman Miller since 2008, consisting of a desk with a walnut frame forming a raised rim that curves around the back and sides of a flat white primary surface and forms a gently elevated rear shelf, a thick walnut front edge, and slender and simplistic white legs, as depicted below:



https://store.hermanmiller.com/desks-tables/airia-desk

30. Products bearing the Trade Dress identified above are advertised and sold to consumers through online retail stores at store.hermanmiller.com, knoll.com, as well as dwr.com, lumens.com, and select other authorized online retailers. Products bearing the Trade Dress are also sold in brick-and-mortar stores through distributors and authorized third-party retailers, including Herman Miller Store, Design Within Reach, and Three Chairs Company.

31. Plaintiffs widely and prominently advertise products bearing the Trade Dress in the marketplace, including television, print media, retail displays, online (e.g., store.hermanmiller.com, knoll.com, shop.noguchi.org, dwr.com, and the websites of major retailers and distributors), and social media (e.g., Instagram, Facebook, X).

32. Currently, Herman Miller's social media accounts, which frequently promote the Trade Dress, have over 600,000 followers on Instagram (https://www.instagram.com/hermanmiller/), over 400,000 followers on Facebook (https://www.facebook.com/HermanMiller), and over 400,000 followers on X (https://x.com/hermanmiller).

33. Plaintiffs have sold millions of units bearing the Trade Dress, generating billions of dollars in revenue.

34. Plaintiffs have expended hundreds of millions of dollars advertising their brands, the majority of which prominently feature and display the Trade Dress.

35. The Trade Dress has appeared prominently in numerous top-rated publications including Vogue, Architectural Digest, and Time Magazine.

36. For decades, Plaintiffs' Trade Dress has received unsolicited, third-party media attention that references the iconic shape and design, as well as numerous industry awards and

other honors including recognition from Red Dot: Best of the Best, Metropolis Likes NeoCon, and T3.

37. Each Trade Dress is non-functional and serves to identify to consumers that the origin of the product is Herman Miller, Knoll, and/or the Noguchi Foundation.

38. Because of Plaintiffs' extensive and continuous use and promotion of the Trade Dress over decades, the Trade Dress has acquired distinctiveness and secondary meaning. Consumers in Michigan and throughout the United States recognize the Trade Dress as identifying Plaintiffs as the source of their furniture products and distinguishing those products from the products of others.

39. As a result, the Trade Dress has become well-known and widely recognized by consumers in the State of Michigan and throughout the United States to indicate the source of Plaintiffs' furniture designs.

40. The Trade Dress is distinctive and famous under 15 U.S.C. § 1125(c).

41. Consumers know and respect the Trade Dress as a symbol of quality and premium furniture designs.

42. As a result of Plaintiffs' extensive, continuous use and promotion of the Trade Dress in interstate commerce, Plaintiffs have developed valuable goodwill and strong common law rights.

43.

## DEFENDANT'S BUSINESS ILLEGALLY TRADES ON ICONIC FURNITURE DESIGNS

44. To capitalize on Plaintiffs' reputation and success in the marketplace, Defendant offers products that mimic Plaintiffs' distinctive furniture designs. As explained above, Defendant widely advertises its product offerings as "reproductions of design icons" such as those icons

covered by the aforementioned Trade Dress.

45. Defendant's use of the term "reproductions" on its website acknowledges that its products are deliberate copies of Plaintiffs' iconic Trade Dress.

46. Defendant's use of the term "design icon" on its website acknowledges that the consuming public recognizes Plaintiffs' Trade Dress and associates that with one source.

47. On its website, Defendant also states that its "reproductions" are "made with the same materials and craft" and are "shipped straight from the factory," misleading consumers into falsely believing that Defendant's "reproductions" have the same quality and come from the same factory as the Plaintiffs' "design icons." Indeed, Defendant's website also falsely states: "We track down the factories that make furniture for the world's best-known brands" and also that "We connect you directly to those same factories" that is literally false regarding at least the Infringing Products identified herein.

48. Defendants also falsely advertise its that its "reproductions" come from the "same factories that make designer brands."

49. On its website, and in social media, Defendant offers for sale copies of iconic furniture designs that are essentially identical to, or substantially indistinguishable from, the Trade Dress owned by Herman Miller, Knoll, and the Noguchi Foundation.

50. In addition to its website, Defendant advertised its knock-off products on social media platforms, including Instagram and TikTok. In these advertisements, as shown below, Defendant references Plaintiffs' furniture products by name and price. For example, on information and belief, one advertisement compares Plaintiffs' Eames Lounge Chair, labeled "AUTHENTIC" and priced at "$11,300," with what is Defendant's corresponding knock-off, labeled "NON-AUTHENTIC" and priced at "$795." The caption states: "'authentic' simply

answers: who currently owns the legal right to manufacture this design?"




51. In another advertisement promoting Defendant's Spine Bookcase, the presenter states that he is "sure everyone will recognize" the design. He then states that "the original from Design Within Reach is actually on backorder right now" while displaying what is, on information and belief, a screenshot of the ordering page for Plaintiffs' Story Bookcase.




52. Rather than develop its own unique aesthetic from all the design possibilities available, Defendant intentionally chose furniture designs that are confusingly similar to Plaintiffs' Trade Dress, intending to imitate Plaintiffs' iconic, distinctive, widely recognized, and hugely successful furniture designs. Defendant's copying is an intentional and unfair attempt to trade on the goodwill of Herman Miller, Knoll, and Noguchi Foundation and confuse consumers.

53. Defendant acknowledges and admits that its designs come from the Plaintiffs as shown below that Defendant's chair is "inspired by the iconic Eames Aluminum Chair."



A Statement of Design

Inspired by the iconic Eames Aluminum Group Chair, this modern interpretation pairs sculptural form with professional-grade performance. Designed for those who work hard and value design, it delivers both comfort and confidence.

54. Similarly, Defendant acknowledges that it copied "George Nelson's 1958 Swag Leg Desk" and as shown below, Defendant also acknowledges and admits that its "Rise Desk" design was "inspired by the thoughtful simplicity of the Airia Desk."




55. Defendant also promotes and sells its products to consumers in Michigan through sponsored social media advertisements featuring Michigan-based content creators. For example, Defendant sponsored an advertisement featuring "The Iron Victorian," a social media account operated by a couple based in Michigan.

56. In the advertisement, The Iron Victorian describes Defendant as selling "the best dupes ever," explaining that by "dupes" she means "the same exact products that luxury brands are selling for way more money" and that the products are "coming straight from the factory." The advertisement depicts a rug that The Iron Victorian states she purchased from Defendant. *See* https://www.facebook.com/ads/library/?id=2530522570729915.

57. Defendant introduced and has sold at least the knock-offs of Plaintiffs' iconic products shown below (hereinafter referred to as "Infringing Products"), next to Plaintiffs' authentic iconic designs. Plaintiffs reserve the right to add additional counterfeit knock-offs and Trade Dress as additional information regarding the scope of Defendant's activity is revealed during discovery.

| AUTHENTIC ICONIC DESIGN | INFRINGING PRODUCTS |
| --- | --- |
| <br>"Noguchi Table"<br>https://store.hermanmiller.com/living-room-furniture-coffee-side-tables/noguchi-table | <br>"Yone Coffee Table"<br>https://theessential.com/products/yone-coffee-table |
| <br>"Saarinen Dining Table, Round"<br>https://www.knoll.com/shop/en_us/dining-dining-tables/saarinen-dining-table-round | <br>"Pedestal Dining Table"<br>https://theessential.com/products/dining-table<br><br>https://theessential.com/products/pedra-dining-table<br><br>https://theessential.com/products/pedestal-marble-side-table |
| <br>"Tulip™ Side Chair, Upholstered Seat" | <br>"Stem Chair" |

| AUTHENTIC ICONIC DESIGN | INFRINGING PRODUCTS |
|---|---|
| https://www.knoll.com/shop/en_us/dining-dining-chairs/saarinen-tulip-side-chair-upholstered-seat | https://theessential.com/products/stem-chair |
| <br>"Eames Lounge Chair and Ottoman"<br>https://store.hermanmiller.com/living-room-furniture-lounge-chairs-ottomans/eames-lounge-chair-and-ottoman<br><br>https://store.hermanmiller.com/living-room-furniture-lounge-chairs-ottomans/eames-lounge-chair-and-ottoman-vegan-leather | <br>"Lounge Chair"<br>https://theessential.com/products/lounge-chair<br><br>https://theessential.com/products/tessera-lounge-chair |
| <br>"Nelson Platform Bench"<br>https://store.hermanmiller.com/living-room-furniture-benches-stools/nelson-platform-bench-wood-base | <br>"Mikkel Slatted Bench"<br>https://theessential.com/products/mikkel-slatted-bench |
| <br>"Brno Chair - Flat Bar"<br>https://www.knoll.com/shop/en_us/dining-dining-chairs.html | <br>"Flat Bar Chair"<br>https://theessential.com/products/flat-bar-chair |

| AUTHENTIC ICONIC DESIGN | INFRINGING PRODUCTS |
|---|---|
| <br>"Womb™ Chair with Ottoman, Standard"<br>https://www.knoll.com/shop/en_us/living-lounge-chairs/womb-chair-and-ottoman | <br>"Cocoon Chair"<br>https://theessential.com/products/cocoon-chair |
| <br>"Eames Turned Stool"<br>https://store.hermanmiller.com/living-room-furniture-side-tables/eames-turned-stool-shape | <br>"Turned Form Stool"<br>https://theessential.com/products/turned-form-stool |
| <br>"Story Bookcase"<br>https://store.hermanmiller.com/furniture-shelving-storage-bookcases/story-bookcase-standard | <br>"Spine Bookcase"<br>https://theessential.com/products/spine-bookcase |

| AUTHENTIC ICONIC DESIGN | INFRINGING PRODUCTS |
|---|---|
| <br>"Eames Aluminum Group Chair"<br>https://store.hermanmiller.com/office-chairs-home-office/eames-aluminum-group-chair-management | <br>"Executive Leather Office Chair"<br>https://theessential.com/products/ribbed-leather-office-chair |
| <br>"Barcelona Chair"<br>https://www.dwr.com/living-lounge-chairs/barcelona-chair-leather | <br><br>"Pavilion Lounge Chair"<br>https://theessential.com/products/pavilion-lounge-chair-new |

| AUTHENTIC ICONIC DESIGN | INFRINGING PRODUCTS |
| --- | --- |
|  “Eames Executive Chair” https://www.dwr.com/office-chairs/eames-executive-chair |  “Easy Leather Office Chair” https://theessential.com/products/padded-leather-office-chair |
|  “Nelson Propeller Bubble Pendant” https://store.hermanmiller.com/lighting-ceiling-lights-pendants/nelson-propeller-bubble-pendant |  “Nimbus Wide Pendant” https://theessential.com/products/nimbus-bubble-wide-saucer-pendant |

| AUTHENTIC ICONIC DESIGN | INFRINGING PRODUCTS |
| --- | --- |
|  "Nelson Pear Bubble Pendant" https://store.hermanmiller.com/lighting-ceiling-lights-pendants/nelson-pear-bubble-pendant |  "Nimbus Sphere Pendant" https://theessential.com/products/nimbus-bubble-sphere-pendant |
|  "Nelson Saucer Crisscross Bubble Pendant" https://store.hermanmiller.com/lighting-ceiling-lights-pendants/nelson-saucer-crisscross-bubble-pendant |  "Nimbus Crescent Pendant" https://theessential.com/products/nimbus-bubble-crescent-pendant |
|  |  |

| AUTHENTIC ICONIC DESIGN | INFRINGING PRODUCTS |
|---|---|
| “Nelson Swag-leg Desk”<br>https://store.hermanmiller.com/desks-tables/nelson-swag-leg-desk | “Rutrick desk”<br>https://theessential.com/products/rutrick-desk |
| <br>“Airia Desk”<br>https://store.hermanmiller.com/desks-tables/airia-desk | <br>“Rise Desk”<br>https://theessential.com/products/rise-desk |

58. On information and belief, the spurious copies of Plaintiffs’ Trade Dress sold by Defendant bear no identifying information to permit initial or subsequent purchasers to distinguish them from the original, genuine, and authentic designs manufactured and sold by the Plaintiffs.

59. Such exact or nearly exact copies are spurious and constitute counterfeit imitations of the genuine Registered Trademarks within the meaning of 15 U.S.C. § 1127.

60. The Infringing Products are sold in the same or similar channels of trade as the Plaintiffs’ furniture designs. Defendant’s Infringing Products are advertised and sold throughout the United States on the Internet and distributed throughout the United States, including throughout Michigan.

61. Upon information and belief, the Infringing Products do not have the same premium quality as the Herman Miller, Knoll, and Noguchi Foundation furniture designs.

62. Defendant could have selected from or developed a virtually infinite number of alternative furniture designs instead of the Infringing Products, which would not be confusingly similar to Plaintiffs’ Trade Dress.

63. Defendant's use of the confusingly similar furniture designs began well after Plaintiffs' Trade Dress had acquired great strength, fame, and consumer recognition in the marketplace.

64. Defendant was aware of Plaintiffs' Trade Dress before it recently began use of the confusingly similar furniture designs complained of herein.

65. Defendant's commercial use of the Trade Dress is in interstate commerce and is without the permission or authority of Plaintiffs.

66. Defendant's Infringing Products are reproductions, counterfeits, copies, or colorable imitations of Plaintiffs' Trade Dress and are sold within and distributed throughout the State of Michigan.

67. Defendant's unauthorized commercial use of the Infringing Products is likely to cause confusion, or mistake, or deceive consumers and potential consumers as to the affiliation, connection, or association of Defendant with Plaintiffs, or as to origin, sponsorship or approval of Defendant's goods, or commercial activities of Plaintiffs, and falsely indicates to the purchasing public that Defendant, its business, and its goods or services originate with, are endorsed by, or are in some manner related to Plaintiffs or their goods and services.

68. Defendant's unauthorized use of its confusingly similar Infringing Products falsely designates the origin of Defendant's goods, and falsely or misleadingly describes and represents facts with respect to Defendant and its goods.

69. Defendant's unauthorized use of its confusingly similar Infringing Products creates confusion, including post-sale confusion that occurs when a consumer or potential consumer sees one of Defendant's Infringing Products and falsely believes it to have originated from the authentic brand. Such consumers come away with false and injurious associations about the brand and may

also be prompted to make a purchase of their own from Defendant due to their confusion.

70. Defendant's unauthorized use of its confusingly similar Infringing Products enables Defendant to trade on and receive the benefit of goodwill built up at great labor and expense by Plaintiffs, and to gain acceptance for Defendant's goods based on the reputation and goodwill of Plaintiffs, their goods, and their Trade Dress.

71. Defendant's unauthorized use of its confusingly similar Infringing Products, which are reproductions, counterfeits, copies, or colorable imitations of the Herman Miller, Knoll, and Noguchi Foundation's furniture designs and Trade Dress, enables Defendant to palm off its goods on the unsuspecting public as those of Plaintiffs.

72. Defendant's unauthorized use of its confusingly similar furniture designs removes from Plaintiffs the ability to control the nature and quality of goods and services associated by consumers with Plaintiffs' marks and places the valuable reputation and goodwill of Plaintiffs in the hands of Defendant, over whom Plaintiffs have no control.

73. Defendant has damaged Plaintiffs' goodwill and reputation and is continuing to cause damage to Plaintiffs in many ways, including but not limited to:

a. Loss of sales due to consumer confusion, which could result from any or all of initial interest confusion, point-of-sale confusion, or post-sale confusion.

b. Dilution of Plaintiffs' famous Trade Dress and of the reputation for quality associated with it.

c. Injury to brand value, reputation, and goodwill due to infringement and dilution.

d. Loss of sales and injury to brand value, reputation, and goodwill due to false representations about its purported lack of intellectual property rights.

74. Indeed, in June of 2026, MillerKnoll advised through the Shopify platform that The

Essential was selling "counterfeit copies of MillerKnoll products" where the "originals are protected by multiple registrations for words and product configuration trade dress and are featured in numerous museums around the world." The Essential was notified and largely ignored MillerKnoll's complaints but claimed, without support or substantiation, that its "underlying design is in the public domain." The Essential continued to sell its counterfeit copies of MillerKnoll products as outlined herein.

75. Unless Defendant is restrained by this Court, Defendant will continue to cause irreparable injury to Plaintiffs and the public for which there is no adequate remedy at law.

76. Defendant's acts complained of herein have been deliberate, willful, intentional, and in bad faith, with full knowledge and conscious disregard of Plaintiffs' rights.

77. In view of the egregious nature of Defendant's actions, this is an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

**COUNT I: Federal Trademark Counterfeiting**
**15 U.S.C. §§ 1114(1)(a), 1116(d), 1117(b)–(c)**

78. Plaintiffs repeat the allegations above as if fully set forth herein.

79. Plaintiffs own the Registered Trademarks identified above. Each is registered on the Principal Register, is valid and subsisting, and is in use in commerce in connection with the goods identified in its registration.

80. Defendant has used in commerce spurious designs that are identical with, or substantially indistinguishable from, the Registered Trademarks, on the same types of goods for which the Registered Trademarks are registered, as follows:

a. Defendant's "Yone Coffee Table" is identical with, or substantially indistinguishable from, the Noguchi Coffee Table design of U.S. Reg. No. 2,648,166, registered for "tables";

b. Defendant's "Pedestal Dining Table" is identical with, or substantially indistinguishable from, the Saarinen Table design of U.S. Reg. No. 6,886,737, registered for "tables";

c. Defendant's "Lounge Chair" is identical with, or substantially indistinguishable from, the Eames Lounge Chair design of U.S. Reg. No. 2,716,843, registered for "furniture, namely, a chair";

d. The ottoman Defendant sells with its "Lounge Chair" is identical with, or substantially indistinguishable from, the Eames Ottoman design of U.S. Reg. No. 5,767,140, registered for "furniture, namely, ottomans";

e. Defendant's "Mikkel Slatted Bench" is identical with, or substantially indistinguishable from, the Nelson Bench design of U.S. Reg. No. 5,672,151, registered for "furniture, namely, benches";

f. Defendant's "Flat Bar Chair" is identical with, or substantially indistinguishable from, the Brno Chair design of U.S. Reg. No. 2,894,978, registered for "chairs";

g. Defendant's "Cocoon Chair" is identical with, or substantially indistinguishable from, the Womb Chair design of U.S. Reg. No. 5,694,476, registered for "chairs";

h. Defendant's "Executive Leather Office Chair" is identical with, or substantially indistinguishable from, the Eames Aluminum Group Chair design of U.S. Reg. No. 3,105,591, registered for "furniture, namely chairs"; and

i. Defendant's "Pavilion Lounge Chair" is identical with, or substantially indistinguishable from, the Barcelona Chair design of U.S. Reg. No. 2,893,025, registered for "chairs."

81. Plaintiffs have never licensed or otherwise authorized Defendant to use any of the

Registered Trademarks. The Infringing Products are not genuine products of Herman Miller, Knoll, or the Noguchi Foundation. Plaintiffs did not manufacture, inspect, or approve the Infringing Products and have no control over their nature or quality.

82. On information and belief, the Infringing Products bear no name, logo, or other source identifier that distinguishes them from Plaintiffs' genuine products.

83. Defendant intentionally used the Registered Trademarks knowing that its designs were counterfeits of them. Among other things, Defendant (a) markets its products as "reproductions of design icons"; (b) advertised its "Lounge Chair" beside Plaintiffs' Eames Lounge Chair, labeling Plaintiffs' product "AUTHENTIC" at "$11,300" and its own product "NON-AUTHENTIC" at "$795"; (c) describes the plywood shell of its "Lounge Chair" as "historically accurate"; and (d) in advertising its "Spine Bookcase," stated that it was "sure everyone will recognize" the design and that "the original from Design Within Reach is actually on backorder right now."

84. Each of the designs identified above is a "counterfeit mark" within the meaning of 15 U.S.C. §§ 1116(d)(1)(B) and 1127. Defendant's use in commerce of those counterfeit marks in connection with the sale, offering for sale, distribution, and advertising of the Infringing Products is likely to cause confusion, mistake, or deception, and constitutes trademark counterfeiting in violation of 15 U.S.C. § 1114(1)(a).

85. Defendant's counterfeiting is likely to cause confusion, resulting in lost sales to Plaintiffs, diminution in brand value, and other harms set forth above.

86. Defendant's counterfeiting has been intentional and willful within the meaning of 15 U.S.C. § 1117(b) and (c)(2).

87. In the absence of injunctive relief, such deliberate counterfeiting is likely to

continue, and Plaintiffs are likely to continue to suffer great and irreparable injury.

88. Plaintiffs have no adequate remedy at law and are entitled to injunctive relief under 15 U.S.C. § 1116. Plaintiffs are further entitled under 15 U.S.C. § 1117(b) to three times Defendant's profits or Plaintiffs' damages, whichever is greater, together with reasonable attorneys' fees and prejudgment interest, or, at Plaintiffs' election at any time before final judgment, to statutory damages under 15 U.S.C. § 1117(c) of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed.

89. This is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

**COUNT II: Federal Trademark Infringement**
**15 U.S.C. § 1114**

90. Plaintiffs repeat the allegations above as if fully set forth herein.

91. Plaintiffs own the federally Registered Trademarks identified above.

92. The acts of Defendant complained of herein constitute trademark infringement, use in commerce of a reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' Registered Trademarks on or in connection with the sale, offering for sale, distribution, or advertising of goods or services in violation of 15 U.S.C. § 1114.

93. The acts of Defendant complained of herein are likely to cause confusion resulting in lost sales to Plaintiffs, diminution in brand value, and other harms set forth above.

94. A comparison of Plaintiffs' Registered Trademarks and Defendant's Infringing Products is shown below:

| Description | Plaintiffs' Registration | Infringing Product |
|---|---|---|
| **Noguchi Coffee Table**<br>U.S. Reg. No. 2,648,166<br>Registered: 2002-11-12<br>Owner: Noguchi Foundation |  |  |
| **Saarinen Table**<br>U.S. Reg. No. 6,886,737<br>Registered: 2022-11-01<br>Owner: Knoll |  |  |
| **Eames Lounge Chair**<br>U.S. Reg. No. 2,716,843<br>Registered: 2003-05-20<br>Owner: Herman Miller |  |  |
| **Eames Ottoman**<br>U.S. Reg. No. 5,767,140<br>Registered: 2019-06-04<br>Owner: Herman Miller |  |  |
| **Nelson Bench**<br>U.S. Reg. No. 5,672,151<br>Registered: 2017-02-15<br>Owner: Herman Miller |  |  |

| Description | Plaintiffs' Registration | Infringing Product |
|---|---|---|
| **Brno Chair**<br>U.S. Reg. No. 2,894,978<br>Registered: 2004-10-19<br>Owner: Knoll |  |  |
| **Womb Chair**<br>U.S. Reg. No. 5,694,476<br>Registered: 2019-03-12<br>Owner: Knoll |  |  |
| **Eames Aluminum Group Chair**<br>U.S. Reg. No. 3,105,591<br>Registered: 2006-06-20<br>Owner: Herman Miller |  |  |
| **Barcelona Chair**<br>U.S. Reg. No. 2,893,025<br>Registered: 2004-10-12<br>Owner: Knoll |  |  |

95. Defendant's infringement has been deliberate and willful.

96. In the absence of injunctive relief, such deliberate infringement is likely to continue, and Plaintiffs are likely to continue to suffer great and irreparable injury.

97. Plaintiffs have no adequate remedy at law and are entitled to injunctive relief under 15 U.S.C. § 1116, and to Defendant's profits, Plaintiffs' actual damages, enhanced damages, costs, and reasonable attorneys' fees under 15 U.S.C. § 1117(a).

98. This is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

**COUNT III: Trade Dress Infringement**
**15 U.S.C. § 1125**

99. Plaintiffs repeat the allegations above as if fully set forth herein.

100. The acts of Defendant complained of herein constitute trade dress infringement in violation of 15 U.S.C. § 1125(a). Defendant's use of Plaintiffs' Trade Dress and/or reproductions, counterfeits, copies, or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendant with Plaintiffs and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Plaintiffs.

101. Plaintiffs' Trade Dress is entitled to protection under the Lanham Act. Plaintiffs' Trade Dress includes unique, inherently distinctive and non-functional designs. Plaintiffs have extensively and continuously promoted and used their Trade Dress in commerce in the United States. Through that extensive and continuous use, Plaintiffs' Trade Dress has become a well-known indicator of the origin and quality of Plaintiffs' furniture products. Plaintiffs' Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, Plaintiffs' Trade Dress acquired this secondary meaning long before Defendant commenced its unlawful use of Plaintiffs' Trade Dress in connection with the infringing products.

102. Plaintiffs have been damaged by Defendant's unlawful use of Plaintiffs' Trade Dress and, unless enjoined, Defendant's unlawful use of Plaintiffs' Trade Dress will continue to cause substantial and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law. The injury to Plaintiffs includes at least substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiffs, Plaintiffs' Trade Dress, and Plaintiffs'

furniture design products.

103. Defendant's use of Plaintiffs' Trade Dress has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the similarity of the infringing product design to Plaintiffs' Trade Dress, as demonstrated above, see for example paragraph 57.

104. Plaintiffs are entitled to injunctive relief, and Plaintiffs are entitled to recover at least Defendant's profits, Plaintiffs' actual damages, enhanced damages/profits, costs, and reasonable attorneys' fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

105. In view of the nature of Defendant's acts in violation of 15 U.S.C. § 1125(a) complained of herein, and/or Defendant's willfulness and bad faith, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

**COUNT IV: Federal Unfair Competition**

106. Plaintiffs repeat the allegations above as if fully set forth herein.

107. Defendant has used and continues to use Plaintiffs' Trade Dress in commerce, or counterfeits, reproductions, copies, or colorable imitations thereof.

108. The acts of Defendant complained of herein constitute trademark and trade dress infringement, false designations of origin, false or misleading descriptions or representations of fact on or in connection with goods or services, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

109. The acts of Defendant complained of herein constitute false advertising and are literally false or misleading.

110. The acts of Defendant complained of herein actually deceive or have the tendency to deceive a substantial portion of its intended audience.

111. The acts of Defendant complained of herein are likely to influence the purchasing decisions of the audience.

112. The acts of Defendant complained of herein have been introduced into interstate commerce.

113. There is a causal link between the acts of Defendant complained of herein and a commercial injury to Plaintiffs such as lost sales or damaged business reputation as alleged herein.

114. Plaintiffs have been damaged by Defendant's acts in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) complained of herein.

115. The nature of Defendant's acts in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) complained of herein and/or Defendant's willfulness and bad faith, makes this an exceptional case under 15 U.S.C. § 1117.

**COUNT V: Federal Trademark Dilution**
**15 U.S.C. § 1125**

116. Plaintiffs repeat the allegations above as if fully set forth herein.

117. Defendant, directly or through intermediaries, began selling, offering for sale, distributing, or advertising the Infringing Products after one or more of the Trade Dress set forth herein became famous and distinctive.

118. Defendant has used and continues to use Plaintiffs' Trade Dress in commerce, or counterfeits, reproductions, copies, or colorable imitations thereof in connection with the advertising, promotion, and sale of Defendant's products.

119. Defendant's unauthorized use in commerce of each Trademark in connection with the Infringing Products removes from Plaintiffs the ability to control the nature and quality of products provided under each of Plaintiffs' Trademarks and places the valuable goodwill and reputation of Plaintiffs, Plaintiffs' furniture designs, and each of Plaintiffs' Trademarks in the hands of Defendant, over whom Plaintiffs have no control.

120. Defendant's unauthorized use in commerce of each Trademark in connection with

the Infringing Products is likely to cause dilution by blurring or dilution by tarnishment of each of Plaintiffs' famous and distinctive Trademarks.

121. Defendant's acts complained of herein constitute dilution of each of Plaintiffs' famous and distinctive Trademarks in violation of 15 U.S.C. § 1125(c).

122. Defendant's dilution of each of Plaintiffs' famous and distinctive Trademarks in violation of 15 U.S.C. § 1125(c) as complained of herein has been, and continues to be, willful, rendering this case exceptional under 15 U.S.C. § 1117(a).

123. Defendant's acts complained of herein have damaged Plaintiffs in an amount to be proven at trial, but no less under 15 U.S.C. § 1117 than up to three times Defendant's profits or Plaintiffs' actual damages from Defendant's wrongful acts, whichever amount is greater, together with Plaintiffs' reasonable attorneys' fees and costs.

124. Unless Defendant's acts complained of herein are restrained by this Court, those acts will continue and will continue to cause irreparable injury to Plaintiffs and to the public for which there is no adequate remedy at law.

**COUNT VI: Common Law Trademark and Trade Dress Infringement, Unfair Competition, and Deceptive Trade Practices**

125. Plaintiffs repeat the allegations above as if fully set forth herein.

126. Defendant's above-described actions constitute common law trademark infringement, trade dress infringement, unfair competition, and misappropriation of Plaintiffs' goodwill in the State of Michigan.

127. Defendant's above-described actions have, at all times relevant to this action, been willful.

128. As a foreseeable, direct, and proximate cause of Defendant's above-described actions, Plaintiffs have been and will continue to be irreparably damaged.

129. Plaintiffs have no adequate remedy at law.

**COUNT VII: Deceptive Trade Practices**
**Michigan Consumer Protection Act, MCL 445.903 *et seq.***

130. Plaintiffs repeat the allegations above as if fully set forth herein.

131. Defendant's acts described above constitute unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce in violation of the Michigan Consumer Protection Act.

132. Defendant's use of Plaintiffs' trademarks, trade dress, product names, and other source-identifying features in connection with the advertising, promotion, and sale of the Infringing Products creates a probability of confusion or misunderstanding as to the source, sponsorship, approval, affiliation, or connection of Defendant and its products with Plaintiffs.

133. Defendant has represented and marketed the Infringing Products in a manner that falsely or misleadingly associates them with Plaintiffs and Plaintiffs' authentic furniture designs, including by expressly referencing and comparing the Infringing Products to Plaintiffs' products in Defendant's advertising.

134. Defendant's conduct is also likely to cause consumers to believe that the Infringing Products are of a style, model, standard, or quality associated with Plaintiffs when they are not.

135. On information and belief, Defendant has engaged in these deceptive practices willfully and with knowledge of Plaintiffs and their products, intending to capitalize on the reputation and goodwill associated with Plaintiffs' trademarks, trade dress, and furniture designs.

136. Defendant's conduct has caused and, unless enjoined, will continue to cause harm to Plaintiffs and the goodwill associated with Plaintiffs' trademarks and trade dress.

**COUNT VIII: Unjust Enrichment**

137. Plaintiffs repeat the allegations above as if fully set forth herein.

138. Defendant has been and continues to be unjustly enriched at the expense of Plaintiffs by Defendant's acts complained of herein.

139. Defendant has accepted and retained the benefit of the unjust enrichment from its wrongful conduct.

140. There is no express, written contract between Plaintiffs and Defendant that would allow for Defendant to retain the benefit of the unjust enrichment from its wrongful conduct as described herein.

141. Plaintiffs are entitled to recover from Defendant its unjust enrichment including gains, profits, and advantages obtained as a result of its wrongful conduct. Plaintiffs are, at present, unable to ascertain the full extent of the gains, profits, and advantages Defendant has obtained by reason of its wrongful conduct.

142. Plaintiffs have been and continue to be damaged by Defendant's conduct in an amount to be determined at trial.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b) and 5(d), Plaintiffs demand a jury trial of all issues triable by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request entry of judgment against Defendant as follows:

1. That Defendant violated 15 U.S.C. §§ 1114, 1125(a), 1125(c), the Michigan Consumer Protection Act, MCL 445.903 et seq., and Michigan common law, including through trademark counterfeiting, trademark and trade dress infringement, dilution, unfair competition, misappropriation of goodwill, and unjust enrichment;

2. A determination that the case is "exceptional" under 15 U.S.C. § 1117(a);

3. Preliminarily and permanently enjoining and restraining Defendant, its affiliates, subsidiaries, related companies, and all those acting in concert or participation with them from:

a. using (i) the confusingly similar Infringing Products, (ii) any other furniture design that is similar to (i), and (iii) any other furniture design that is likely to cause confusion with Plaintiffs' Trademarks or Trade Dress;

b. otherwise competing unfairly with Plaintiffs in any manner, including, without limitation, unlawfully adopting or using any other furniture designs that are likely to cause confusion with Plaintiffs' Trademarks or Trade Dress;

c. committing any acts or making any statements calculated, or the reasonably foreseeable consequence of which would be, to infringe or likely to dilute Plaintiffs' registered Trademarks or Trade Dress, or to confuse, mislead, or deceive consumers as to the affiliation, connection, or association of Defendant with Plaintiffs or as to the origin, sponsorship, or approval of Defendant's goods or commercial activities by Plaintiffs; and

d. conspiring with, aiding, assisting or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a), (b), and (c) above;

4. That Defendant, its affiliates, subsidiaries, related companies, and all those acting in concert or participation with them be ordered to:

a. remove from all websites any depiction or references to the Infringing Products;

b. recall and destroy (or deliver to the Court for destruction) all products and packaging consisting of, involving, or related to the Infringing Products and

provide proof to the Court of the same; and

c. destroy (or deliver to the Court for destruction) any and all advertising or promotional or other materials pertaining to the Infringing Products and all products utilizing or embodying the accused furniture designs, regardless of the medium on which such advertising, promotional, or other materials are contained and provide proof to the Court of the same;

5. That Defendant be required to file with this Court and serve upon Plaintiffs within thirty (30) days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant complied with the injunction;

6. That Defendant be required to account for, and turn over to Plaintiffs, all profits realized as a result of its infringement and other unlawful acts, such award of profits to be enhanced as the Court finds just under the circumstances of this case;

7. That Plaintiffs be awarded their actual damages and Defendant's profits under 15 U.S.C. § 1117(a), trebled under 15 U.S.C. § 1117(b) based on Defendant's counterfeiting, or, at Plaintiffs' election, statutory damages under 15 U.S.C. § 1117(c) of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed;

8. That Plaintiffs be awarded their attorneys' fees pursuant to 15 U.S.C. § 1117(a) and (b) or other applicable law;

9. That Plaintiffs be awarded their costs of this action, and prejudgment and post-judgment interest;

10. That Plaintiffs be awarded exemplary damages; and

11. That Plaintiffs be granted such other and further relief, at law or in equity, as the

Court may deem just and proper.

Dated: November 23, 2026

Respectfully submitted,

*/s/ Marc Lorelli*
Marc Lorelli (P63156)
Chelsea E. Pasquali (P77375)
**BROOKS KUSHMAN P.C.**
150 W. Second St., Suite 400N
Royal Oak, MI 48067-3846
Telephone: (248) 358-4400
Fax: (248) 358-3351
Email:
mlorelli@brookskushman.com
cpasquali@brookskushman.com

*Counsel for Plaintiffs Herman Miller, Knoll, and Noguchi Foundation*

Marc P. Misthal (*Pro Hac Vice* Application forthcoming)
OFFIT KURMAN, P.A.
590 Madison Avenue, 6th Floor
New York, NY 10022
Telephone: (212) 545-1900
Email:
marc.misthal@offitkurman.com

*Counsel for Plaintiff Noguchi Foundation*